OPINION
{¶ 1} Defendant-appellant James Rogers appeals from his conviction and sentence, following a no-contest plea, for Operating a Motor Vehicle Under the Influence, with five prior offenses within the last twenty years, and with a refusal to take a blood alcohol test. Rogers contends that the trial court should have granted his motion to dismiss the indictment, because the offense of which he was previously convicted in Michigan — Driving While Impaired — which served as one of the predicate prior offenses, is not substantially equivalent to the Ohio offense of Operating a Motor Vehicle Under the Influence. We reject this contention, because we conclude that the two offenses are substantially equivalent.
 {¶ 2} Rogers also contends that the trial court erred by denying his motion to suppress, because the police officer who stopped him lacked a reasonable, articulable suspicion justifying an investigative stop. We conclude that there is evidence in the record from which the trial court could find, as it did, that the officer had a reasonable, articulable suspicion that the driver of the truck, which turned out to be Rogers, was under a license suspension. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Early one morning in January, 2005, Englewood Police Officer Timothy Thomas was checking registrations of vehicles in a Motel 6 parking lot. Thomas determined that the registered owner of a Chevrolet pickup truck in the lot had a suspended driver's license. Later that day, between 12:30 and 12:45, Thomas noticed the same pickup truck leaving the motel parking lot. It is not clear from the transcript of the suppression hearing whether Thomas concluded that the driver of the truck matched Rogers's description, or whether Thomas concluded that the truck matched the description of the vehicle:
 {¶ 4} "Uh . . . later in the day, uh . . . I was in the area again, observed that particular vehicle, uh . . . ran the registration again. The, uh . . . — Mr. Rogers, uh . . . the Defendant, matched the physical description of the vehicle [sic]." ([sic] in the original transcript.)
 {¶ 5} The truck did not signal when turning from the parking lot onto North Main Street, straddled both turn lanes when preparing to pull out onto the public road, and in correcting for some irregularity in making the turn, "almost over corrected and * * * made contact with the rear wheels to the curb." Thomas followed Rogers for a few seconds before signaling him to pull over. In stopping, Rogers turned into a service station lot, appropriately signaling to do so.
 {¶ 6} From the point that Rogers rolled down his window to speak to Thomas, evidence began to accumulate that Rogers was under the influence. A horizontal gaze nystagmus test was attempted, but was discontinued when Rogers failed to follow directions. The trial court suppressed this test upon the ground that it was not administered in accordance with applicable regulations.
 {¶ 7} Rogers failed other field sobriety tests. He was arrested for Operating a Motor Vehicle While Under the Influence and for Driving Under Suspension. He refused chemical testing.
 {¶ 8} Rogers was initially charged by indictment with two counts of Driving Under the Influence, one with three prior convictions within six years, and one with three prior convictions within six years and a refusal to take a chemical test. This indictment was superseded by a subsequent indictment charging Rogers with two counts of Driving Under the Influence, one with three prior convictions within six years, and the other with five prior convictions within twenty years, and a refusal to take a chemical test. Rogers moved to dismiss the indictment, which was ultimately overruled.
 {¶ 9} Rogers moved to suppress the evidence, contending, among other things, that it was obtained as the result of an unlawful stop. This part of his motion to suppress was overruled, the trial court concluding that the stop was proper.
 {¶ 10} Thereafter, Rogers pled no contest to the second count, and the first count was dismissed. Rogers was convicted, and sentenced accordingly. From his conviction and sentence, Rogers appeals.
 II {¶ 11} Rogers's First Assignment of Error is as follows:
 {¶ 12} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM."
 {¶ 13} Rogers contends that one of the prior convictions relied upon by the State, a conviction for Operating a Motor Vehicle While Impaired, in Michigan, in 2001, is not an "equivalent offense" for purposes of R.C. 4511.19(G)(1)(d). An "equivalent offense" is defined as a "violation of an existing or former law * * * of another state * * * that is substantially equivalent to division (A) or (B) of R.C. 4511.19." R.C.4511.181(A)(6).
 {¶ 14} The applicable Ohio offense is R.C. 4511.19(A)(1), which provides as follows:
 {¶ 15} "No person shall operate any vehicle, * * * within this state, if, at the time of the operation, any of the following apply:
 {¶ 16} "(1) The person is under the influence of alcohol, a drug of abuse, or a combination of them." (Emphasis added.)
 {¶ 17} The predicate Michigan offense of which Rogers was convicted in 2001 is Michigan Compiled Laws, Annotated, § 257.625(3), which provides as follows:
 {¶ 18} "A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state when, due to the consumption of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance, the person's ability to operate the vehicleis visibly impaired." (Emphasis added.)
 {¶ 19} M.C.L. § 257.625(1) provides, in pertinent part, as follows:
 {¶ 20} "A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if either of the following applies:
 {¶ 21} "(a) The person is under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.
 {¶ 22} "(b) * * *." (Emphasis added.)
 {¶ 23} As Rogers notes, M.C.L. § 257.625(3) is a lesser-included offense of M.C.L. § 257.625(1). Oxendine v.Secretary of State (1999), 602 N.W.2d 847, 237 Mich. App. 346, appeal denied 611 N.W.2d 798, 461 Mich. 1022. Therefore, Rogers argues, the Michigan offense of which he was convicted, Operating a Vehicle While Impaired, being a lesser-included offense of the Michigan offense of Operating a Vehicle While Under the Influence, cannot be substantially equivalent to the Ohio offense of Operating a Vehicle While Under the Influence. We disagree.
 {¶ 24} In Michigan, two different levels of criminal culpability for driving while under the influence of alcohol have been established. The greater of these, Operating a Vehicle While Under the Influence, requires that the motorist's ability to drive shall have been "substantially and materially affected" by the consumption of intoxicating liquor; or, in other words, that the motorist was "substantially deprived of his or her normal control or clarity of mind at the time of the operation of the vehicle." Oxendine, supra.
 {¶ 25} The lesser degree of culpability under Michigan law is provided for "visible impairment," meaning that the "defendant's ability to drive is so weakened or reduced by consumption of intoxicating liquor that the defendant drives with less ability than would an ordinary, careful, and prudent driver." The weakening or reduction of driving ability must be visible to an ordinary, observant person. People v. Calvin (1996),548 N.W.2d 720, 216 Mich. App. 403, appeal denied 558 N.W.2d 729,454 Mich. 859, reconsideration denied 562 N.W.2d 202, 454 Mich. 859.
 {¶ 26} We conclude that both the greater and lesser degrees of culpability specified in Michigan law for driving while impaired are covered by R.C. 4511.19(A), which does not distinguish between these two degrees of culpability. Being under the influence of intoxicating liquor, for purposes of R.C.4511.19, means that a defendant has consumed intoxicating liquor to the extent that the effect on the accused is to adversely affect his action, reactions, conduct, movements, or mental processes in such manner as to deprive him of that clearness of intellect and control of himself which he would otherwise have possessed under the circumstances then existing. State v. Titak
(Columbiana App., 1955), 75 Ohio Law Abs. 430. Being under the influence of alcohol has also been defined in Ohio as requiring a showing "that the alcohol has impaired one's physical or mental self-control." McKeehan v. Am. Family Life Assur. Co.,156 Ohio App.3d 254, 259, 2004-Ohio-764, ¶ 12.
 {¶ 27} To be under the influence of intoxicating liquor for purposes of R.C. 4511.19(A) does not require either that the motorist be substantially deprived of his or her normal control or clarity of mind, as required for the greater Michigan offense, or that the motorist's ability to drive be visibly impaired, as required for the lesser Michigan offense; to the contrary, violation of the Ohio statute appears to require only some impairment. Consequently, we conclude that a violation under either division of the Michigan statute would involve at least as much culpability as a violation of R.C. 4511.19(A), and is therefore substantially equivalent.
 {¶ 28} Rogers's First Assignment of Error is overruled.
 III {¶ 29} Rogers's Second Assignment of Error is as follows:
 {¶ 30} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE RELATED TO THE ILLEGAL STOP OF APPELLANT'S VEHICLE."
 {¶ 31} Rogers contends that Thomas lacked sufficient reasonable, articulable suspicion for the investigatory stop. The trial court concluded that Thomas had a reasonable, articulable suspicion that the driver of the truck was under a license suspicion, based upon Thomas's earlier finding that the person to whom the truck was registered was under a license suspension. We agree.
 {¶ 32} Rogers contends that due to the truck's tinted windows, and the relative positions of Thomas and Rogers, it is not credible that Thomas could determine that the driver of the truck matched Rogers's description. In our view, this is immaterial. The likelihood that the driver of a vehicle is the person to whom the vehicle is registered is, in our view, sufficient, in the absence of contradictory evidence, to support a reasonable and articulable suspicion to that effect, justifying a brief, investigative stop, where, as here, the person to whom the vehicle is registered is under a license suspension. If the observed driver of the vehicle clearly does not match the description of the registered owner — if, for example, the driver is of the opposite gender — then it would not be reasonable to suspect that the driver is, in fact, the registered owner. There may be other circumstances that, if known to the officer, would render unreasonable a suspicion that the registered owner of the vehicle is, in fact, the driver. But, a vehicle's being driven by its registered owner is sufficiently commonplace, in the absence of contraindicating evidence, to render reasonable a suspicion that it is being driven by its registered owner.
 {¶ 33} Rogers's Second Assignment of Error is overruled.
 IV {¶ 34} Both of Rogers's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Glasser, JJ., concur.
(Hon. George Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).